IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SPENCER J. LAMBETH and SARA K. LAMBETH, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | 1:19-CV-02602-ELR |
| THREE LAKES CORPORATION, *a Georgia Corporation*, | * * * | |
| Defendant. | * * | |

_____

**O R D E R**

_____

Presently before the Court are several matters. The Court's rulings and conclusions are set out below.

**I.   Background**

This case involves purported violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, as alleged by Plaintiffs Spencer J. and Sara K. Lambeth. Compl. [Doc. 1]. The Court first provides the relevant factual background before turning to the procedural history.

A. **Factual Background**[1]

Plaintiffs own and reside at 4664 Lake Forrest Drive, Sandy Springs, Fulton County, Georgia ("Lambeth Property"), which is located on Lower Lake Forrest. Pls.' Statement of Material Facts ¶ 1 [Doc. 50-2] ("Pls.' SOMF"). The Lambeth Property abuts Lower Lake Forrest with views of the lake from their home. Id. Lower Lake Forrest was constructed during the 1950s in a section of Nancy Creek along with two sister dams upstream, which are referred to as the Middle and Upper Lakes. Id. ¶ 2.

Defendant Three Lakes Corporation ("TLC") is a Georgia for-profit corporation created to hold legal title to and maintain for the benefit of its members the three (3) lakes, including Lower Lake Forrest and the upper portion of Lower Lake Forrest Dam. Id. ¶ 3. Former co-Defendants City of Atlanta and City of Sandy Springs (the "City Defendants") are also owners of the dam by virtue of their ownership and responsibility for Lake Forrest Drive. Def.'s Undisputed Facts in Opposition to Plaintiffs' Motion for Summary Judgment ¶ 2 [Doc. 51] ("Def.'s SOMF").

In March 2009, a government-contracted company, Golder Associates (the "Golder company"), assessed the Lake Forrest Dam on behalf of The Georgia

---

[1] All facts noted herein are undisputed unless otherwise indicated.

Environmental Protection Division ("EPD"), Safe Dams Program ("SDP").[2] Pls.' SOMF ¶¶ 6, 8. The Golder company's analysis recommended reclassification of the Lake Forrest Dam as a Category I, high hazard dam because the dam posed significant risks in the event of a breach. Id. ¶ 9. As a result, EPD-SDP reclassified the Lower Lake Dam as a Category I dam. Id. ¶ 10. Between May and July 2009, EPD-SDP notified the owners of Lake Forrest Dam, including Defendant TLC, of the reclassification. Id. ¶ 11. Defendant TLC did not dispute or challenge the reclassification or its status as an owner of the dam. Id.

In December 2014, Defendant TLC learned that the City Defendants intended to completely drain Lower Lake Forrest for dam repairs. Id. ¶ 14. Over several months, the City Defendants gave Defendant TLC additional information concerning their plans to drain the lake. Id. ¶¶ 14, 16. In May 2015, the City Defendants began the project by cutting down the standpipe on the spillway and lowering the elevation of the discharge outlet, intending to reduce the lake level by fifty (50) percent. Id. ¶¶ 17–18; Def.'s SOMF ¶ 1. At that time, there were no approved plans to restore Lower Lake Forrest to its original level and no Defendant had applied for permits to complete the draining or alteration of the Lake Forrest Dam. Pls.' SOMF ¶ 18. The standpipe and discharge outlet are on Defendant TLC's

---

[2] The Georgia Environmental Protection Division, Safe Dams Program is responsible for developing and maintaining an inventory of dams in Georgia, classifying dams, and ensuring compliance of all dams with relevant regulations. Pls.' SOMF ¶ 6.

property. Id. ¶ 19. Defendant TLC states that it participated in the decisions about what to do with respect to the Lower Lake Forrest Dam but did not have "veto power." Def.'s Resp. to Pls.' SOMF ¶ 23 [Doc. 52].

On March 30, 2016, contractors that the City Defendants retained brought heavy equipment onto Defendant TLC's property, pursuant to the May 2015 plans. Pls.' SOMF ¶ 23. On April 7, 2016, without a permit, the City Defendants' contractor began excavating the dam and dredging a portion of Lower Lake Forrest, breaching the dam, and discharging sediment-laden water downstream. Id. ¶ 24. At the next TLC membership meeting on April 14, 2016, Defendant TLC admitted that the City Defendants did not have right to drain the lake without a Clean Water Act permit. Id. ¶ 25.

In connection with the dam repairs, the City Defendants requested and received an after-the-fact Nationwide Permit from the US Army Corps of Engineers.[3] Id. ¶¶ 28, 33; Def.'s SOMF ¶ 13. The permit issued by US Army Corps of Engineers found that the area was "stabilized."[4] Def.'s SOMF ¶ 14. The permit did not include Defendant TLC. Pls.' SOMF ¶ 34. Defendant TLC did not apply for a separate permit and never sought to secure coverage under any permit obtained

---

[3] Pursuant to 33 U.S.C. § 1344(e), the Secretary of the Army, through the US Army Corps of Engineers, is authorized to issue general dredge and fill permits on a state, regional, or nationwide basis. Additionally, the US Army Corps of Engineers may issue after-the-fact permits if it receives a permit application after the work has been started or completed prior to the application for the permit. See 33 U.S.C. § 1344.

[4] Neither Party provides an explanation of what "stabilized" means in this context.

by the City Defendants. Id. ¶ 30. The dam repair project was not completed, and the lake is not restored. Id. ¶ 36. The sediment fill generated in 2016 remains in place. Id. ¶ 39.

### B. Procedural History

On June 6, 2019, Plaintiffs filed this action against the two (2) City Defendants as well as Defendant TLC, bringing one count: violation of the Clean Water Act, 33 U.S.C. § 1251 *et seq*. See Compl. Shortly thereafter, Plaintiffs voluntarily dismissed the City Defendants from the action [Doc. 34],[5] but the case continued against Defendant TLC.

After several months of discovery, Defendant TLC moved to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 45]. Amid briefing on Defendant's motion, Plaintiffs moved for summary judgment. [Doc. 50]. Because the motions present nearly identical legal arguments [See generally Docs. 45, 50-1], and the Court must necessarily look beyond the

---

[5] Plaintiffs indicate that they "initially included the Cities as defendants for failing to renew their after-the-fact permit after it expired." [Doc. 49 at 15 n.1]. Later, Plaintiffs "dismissed the Cities after they provided new information demonstrating a renewal was unnecessary." [Id.] Plaintiffs contend that the distinction between the City Defendants and Defendant TLC is that the City Defendants "ultimately obtained a permit and [Defendant] TLC" has not. [Id.]

pleadings to address Plaintiffs' motion, the Court converts Defendant's motion into one seeking summary judgment. See FED. R. CIV. P. 12(d). [6]

## II.    Legal Standard

The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is material if resolving the factual issue might change the suit's outcome pursuant to the governing law. Id.  The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party. Id. at 249.

When ruling on a motion for summary judgment, the Court must view all the evidence in the record in the light most favorable to the non-moving party and

---

[6] Usually a Rule 12(d) conversion requires ten (10)-day notice to the Parties. FED. R. CIV. P. 12(d). However, the Court may excuse that requirement when the "parties are aware of the court's intent to consider matters outside the record and have presented all the materials and arguments they would have if proper notice had been given." Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1266 n.11 (11th Cir. 1997).  Because the Parties in this case each responded fully to Plaintiffs' Motion for Summary Judgment [see Docs. 50-1, 53, 59], submitting and highlighting their relevant evidence, and also expressly incorporating their arguments presented in the briefing associated with Defendant TLC's Motion to Dismiss [Docs. 53 at 6 n.2, 59 at 7, 13], the Court finds the formal ten (10)-day notice unnecessary. Cf. Artistic Entm't, Inc. v. City of Warner Robins, 331 F.3d 1196, 1201–02 (11th Cir. 2003) ("[W]here a legal issue has been fully developed, and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided.").

resolve all factual disputes in the non-moving party's favor. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. Id. at 324–26. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

## III.   Discussion

As noted above, Plaintiffs bring one (1) count in their Complaint—violation of the Clean Water Act. See Compl. The Clean Water Act ("CWA" or the "Act") was enacted by Congress in 1972 "to restore and maintain the chemical, physical, and biological integrity" of the waters of the United States. See 33 U.S.C. § 1251(a). The "cornerstone" and "fundamental premise" of the Act is Section 301, which prohibits all discharges of any pollutant unless in compliance with the statute. 33 U.S.C. § 1311; see also Southeast Alaska Conservation Council v. United States Army Corps of Engineers, 486 F.3d 638, 645 (9th Cir. 2007).

As relevant here, Section 404 of the CWA establishes a permit system whereby applicants may obtain permission for the "discharge of dredged or fill material into the navigable waters." See 33 U.S.C. § 1344. The "discharge of dredged material" refers to "any addition of dredged material . . . including redeposit of dredged material other than incidental fallback" into navigable water. 33 C.F.R. § 323.2(d)(1). Similarly, a "discharge of fill material" is "the addition of fill material into waters of the United States." 33 C.F.R. § 323.2(f). The failure to either obtain a permit or comply with the terms and conditions of a valid permit constitutes a CWA violation. 33 U.S.C. §§ 1311 and 1344; see also Atlantic States Legal Foundation v. Tyson Foods, Inc., 897 F.2d 1128 (11th Cir. 1990).

While enforcement of the CWA typically falls to the federal government, Section 505(a) of the Act permits private citizens to file suit to enforce the Act under certain circumstances. 33 U.S.C. § 1365(a). This section provides that citizens may file suit "against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this Act . . . ." Id. The purpose of the "citizen suit provision" is to authorize persons to act as private attorney generals and enforce the Act's requirements. Middlesex County Sewerage Authority v. National Sea Clammers Ass'n, 453 U.S. 1, 16–17 (1981).

In accordance with Section 505(a), Plaintiffs assert that Defendant TLC violated the CWA because of a discharge of fill material occurred on its property

8

without a permit. [See generally Doc. 50-1]. In its Motion to Dismiss and in response to Plaintiffs' Motion for Summary Judgment, Defendant TLC asserts two (2) primary arguments for why it contends Plaintiffs' suit fails. [See Docs. 45, 53, 54]. The Court discusses each in turn.

### A.  Argument #1: "Ongoing" Violation

Defendant's first argument is jurisdictional in nature—namely that Plaintiffs do not seek redress for an "ongoing violation." [Docs. 45-1 at 11; 53 at 16]. According to caselaw, this Court has jurisdiction over citizen suits brought pursuant to the CWA "for [only] ongoing or continuous violations, not for those that are wholly in the past." Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1009 (11th Cir. 2004)); accord Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 64–65 (1987) (explaining requirement of an ongoing violation is jurisdictional). Thus, for jurisdictional purposes, a plaintiff must allege "a state of either continuous or intermittent violation." Gwaltney, 484 U.S. at 57. Here, Defendant TLC argues that there is no ongoing violation because the US Army Corps of Engineers found that the area was "stabilized." [Docs. 45-1 at 11; 53 at 16].

Upon review, the Court finds that it has jurisdiction over Plaintiffs' case for two (2) reasons. First, Defendant TLC cites no authority for its proposition that because the US Army Corps of Engineers found the area to be "stabilized," there is no longer an ongoing violation. Defendant does not explain or argue what

9

"stabilized" means in the context of this case.  This failure alone is sufficient to reject Defendant's argument.  See N.L.R.B. v. McClain of Georgia, Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) (noting that in an appeal, "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived"); Beets v. Rozier, No. 5:06-CV-192 (CAR), 2010 WL 4260529, at *1 (M.D. Ga. Oct. 20, 2010) ("Plaintiff's failure to provide any legal authority supporting its position is enough to warrant denial of the motion.").

Second, Plaintiffs indeed demonstrate an ongoing violation.  In the context of the CWA, a plaintiff may prove an ongoing violation on the merits "either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield. Ltd., 844 F.2d 170, 171–72 (4th Cir. 1988). Here, Plaintiffs satisfy the first prong.  Specifically, Plaintiffs present evidence that the discharged pollutant remains and has not been removed.  See Pls.' SOMF ¶ 39. Defendant TLC does not dispute this evidence.  See Def.'s Resp. to Pls.' SOMF ¶ 39. Other courts, including some within this Circuit, have found that each day that a pollutant remains in the waters constitutes a new, and therefore, continuing violation of the CWA.  See, e.g., Sasser v. EPA, 990 F.2d 127, 129 (4th Cir. 1993) (holding that "each day the pollutant remains in the wetlands without a permit

10

constitutes an additional day of violation") (internal citation omitted); United States v. Reaves, 923 F.Supp. 1530, 1534 (M.D. Fla. 1996) ("[T]he Court finds in this case that Defendant's unpermitted discharge of dredged or fill materials into wetlands on the site is a continuing violation for as long as the fill remains."). Accordingly, the Court rejects Defendant's argument.

B.     Argument #2 – Liability of Defendant TLC

Having determined that jurisdiction exists in this case, the Court turns to Defendant TLC's second, more substantive argument—that it is not liable for a CWA violation because it is not a "discharger" under the Act. [Docs. 45-1 at 6, 53 at 6].

To establish a CWA violation, Plaintiffs must prove five (5) elements: that (1) there has been a discharge; (2) of a pollutant; (3) into waters of the United States; (4) from a point source; (5) without a permit. Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1008 (11th Cir. 2004). Plaintiffs contend that they have proved each element. [See generally Doc. 50-1]. Defendant TLC appears to concede that there has indeed been a violation of the CWA; but Defendant TLC points to the previously dismissed City Defendants as the "dischargers" properly liable for the admitted violation. [See Doc. 53 at 6] ("Plaintiffs['] brief . . . litigates a CWA claim against the *discharger* Cities and simply fails to present any authority or argument to support

that TLC is responsible for the Cities' *violations*.") (emphasis added).[7]  Defendant TLC argues it is not liable for the CWA violation because it "was not responsible for [and did not have] control over any of the discharges." [Id. at 7].

"The CWA imposes liability on both the party who actually performed the work [causing the discharge] and on the party with responsibility for or control over the work."  United States v. Lambert, 915 F. Supp. 797, 802 (S.D.W.V. 1996); see also United States v. Bd. of Trustees of Fl. Keys Comm. College, 531 F. Supp. 267, 274 (S.D. Fla. 1981) ("[C]ivil liability under the statutes is predicated on either (1) performance, or (2) responsibility for or control over performance of the work, in the absence of a federal permit.").  Thus, Defendant TLC is liable if it actually discharged the pollutants into the waters or if it "had responsibility for, or control over, the performance of work which created . . . the discharge of pollutants." Jones v. E.R. Snell Contr., Inc., 333 F. Supp. 2d 1344, 1349 (N.D. Ga. 2004).

Here, all Parties agree that Defendant TLC did not "perform" any work on the dam that caused the discharge.  Def.'s SOMF ¶¶ 8–12.  Instead, the former City

---

[7] Elsewhere, Defendant TLC refers to the CWA violation in vague terms.  [See Doc. 53 at 6] ("Plaintiffs cannot establish that TLC was responsible for or in control of the *alleged* discharges.") (emphasis added).  Despite the equivocal language in Defendant's briefing, the Court finds that Defendant TLC has conceded this issue because it makes no response to Plaintiffs' arguments on this point.  See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned); Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").

Defendants and their contractors completed the physical tasks. See id. As such, the Court's sole determination is if Defendant TLC is "responsible for" or "controlled" the work. Lambert, 915 F. Supp. at 802.

As a preliminary matter, the Court notes that the material facts regarding this issue are not in conflict. It is undisputed that Defendant TLC (1) owns the lake and the portion of the dam where the work and CWA violations occurred; (2) admits that it was aware of and participated in the decision making regarding the work which resulted in violations of the CWA; (3) admits that as a dam owner and property owner it is equally responsible for the dam project and the work done in furtherance of the project; and (4) never sought or obtained a CWA permit, nor did it secure coverage under any permit obtained by the City Defendants. Pls.' SOMF ¶¶ 3, 14–15, 18–19, 22–24, 30, 34. However, it is also undisputed that Defendant TLC (1) provided recommendations concerning the work to the City Defendants which the City Defendants rejected, (2) did not have the authority or ability to control or direct the City Defendants' work, and (3) ultimately, the City Defendants unilaterally decided to lower the level of the lake. Def.'s SOMF ¶ 3; Dep. of Neal J. Sweeney at 267:4–268:1 [Doc. 50-7] ("Sweeney Dep."); Dep. of Hansell Roddenberry at 32:14–37:6 [Doc. 50-14] ("Roddenberry Dep."). Thus, the Court's task is to determine, considering this set of facts, whether Defendant TLC may be held liable for a violation under the CWA as a matter of law. See FED. R. CIV. P.

56(a) (instructing that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

The Court has identified only one case from the Eleventh Circuit Court of Appeals on this precise issue. In Jones, a plaintiff sought to hold a county defendant liable for alleged violations of the CWA. 333 F. Supp. 2d at 1348–49. Like Defendant TLC here, the county defendant argued that it was not liable because it did not "discharge" a pollutant and therefore was not a "discharger" under the Act. Id. The district court granted summary judgment in favor of the county defendant on the plaintiff's CWA claim. Id. at 1349. The Eleventh Circuit, in an unpublished opinion, affirmed, noting:

> The record is undisputed that the County does not own or maintain SR20, and the County was not the final authority on matters relating to the SR20 widening project. Although the County played a role in obtaining the allegedly faulty design, the County was required to submit the plans to the Georgia Department of Transportation (GDOT) for final approval. The County recognized that there were potential problems with the design that could affect Jones's lake, and the County recommended design changes to address those concerns. GDOT rejected those recommendations. The County, therefore, was not responsible for the design flaw at issue, and it cannot be liable as a discharger of pollution. Cf. City of Las Vegas v. Clark County, 755 F.2d 697, 703 (9th Cir. 1985) ("defendants are not dischargers and cannot be in violation of [section 1365(a)]"). Summary judgment was appropriate.

Jones v. E.R. Snell Contr., Inc., No. 04-12206, at *5–6 (11th Cir. App. Sept. 8, 2004).

Defendant, focusing on the district court opinion in this matter, argues that this case is directly on point. [Docs. 45 at 8; 53 at 9]. Like the county defendant in Jones, Defendant TLC provided recommendations to the City Defendants which the City Defendants rejected, did not have the authority or ability to control or direct the City Defendants' work, and final decisions rested with the City Defendants. Def.'s SOMF ¶ 3; Roddenberry Dep. at 32:14–37:6; Sweeney Dep. at 267:4–268:1. However, as Plaintiffs point out and the Court acknowledges, Jones is distinguishable from this case in one key respect—here, it is undisputed that Defendant TLC is an owner of the property on which the violation occurred whereas in Jones, the county defendant did not own the property. See Jones, No. 04-12206, at *5.

Plaintiffs contend that owners of property on which CWA violations occur must obtain permits. [Doc. 49 at 11–12]. In support of this proposition, Plaintiffs rely on Sierra Club v. El Paso Gold Mines, 421 F.3d 1133 (10th Cir. 2005). However, Sierra Club concerned a violation of Section 402 of the CWA, not Section 404, as occurred here. Id. at 1142. Moreover, the facts are quite different from the case at bar. See id. Sierra Club involved a successive owner of an inactive mine where the mine continued to passively discharge pollutants, see id.; here, this case involves the active discharge of pollutants by a joint owner. Thus, the Court finds Sierra Club to be of little help.

15

Plaintiffs also direct the Court to Lambert, 915 F. Supp. 797. In Lambert, the court entered summary judgment against a defendant landowner finding that the he violated the CWA. Id. at 802–03. The defendant argued that he did not actually perform the work that discharged the material and thus was not liable. Id. at 802. However, the court found:

> Although Mr. Lambert did not place the fill material on the riverbank and in the River personally, he clearly was responsible for the performance of that work. The Lamberts owned the property on which the work was done. Mr. Lambert paid for the raw materials and necessary equipment and paid the contractor a substantial sum to perform the task. This work could not have been accomplished without Mr. Lambert's express approval.

Id. at 802–03. Plaintiffs argue this case should control because, like the defendant in Lambert, (1) Defendant TLC owns the property on which the work was done and (2) the work could not have been accomplished without Defendant TLC's approval. [See Doc. 50-1 at 10]. However, Defendant TLC points out that unlike Lambert, there is no evidence that Defendant TLC arranged for the work to be done, hired contractors, paid for the work, or supervised the work. [See Docs. 53 at 14–15; 54 at 6–7]. Thus, the facts of Lambert are materially distinguishable.

While the Court has been unable to find authority that is precisely in line with the facts of this case, the Court is persuaded by the reasoning set out in Froebel v. Meyer, 217 F.3d 928, 938 (7th Cir. 2000). In Froebel, a plaintiff sued under both Sections 402 and 404 of the CWA after the removal of a dam damaged the river

16

downstream.  Id. at 930.  The plaintiff named as defendants both the Wisconsin Department of Natural Resources, which removed the dam, as well as Waukesha County, the owner of land where the dam was located.  Id. at 938–39.  Upon review, the Seventh Circuit affirmed the district court's dismissal of plaintiff's Section 404 claim against the county.  Id. at 939.  In doing so, the court interpreted the relevant statutory language, reasoning:

> The problem with [the plaintiff's] theory is that there is nothing in either the regulations or the case law interpreting Section 404 that indicates that a landowner can fall within the permit requirement for a "discharge" by doing absolutely nothing at all.  A "discharge of dredged material" refers to "any addition of dredged material . . . including redeposit of dredged material other than incidental fallback" into navigable water.  33 C.F.R. § 323.2(d)(1).  Similarly, a "discharge of fill material" is "the addition of fill material into waters of the United States."  33 C.F.R. § 323.2(f).  The reference to "addition" and "redeposit" strongly suggest that a Section 404 permit is required only when the party allegedly needing a permit takes some action, rather than doing nothing whatsoever (as Waukesha County has done here). . . .  Section 404, its underlying regulations, and cases applying its terms all have a common element that is lacking in [the plaintiff's] claims against Waukesha County—active conduct that results in the discharge of dredged or fill material.

Id. at 938–39.  In other words, the court determined that the plaintiff could not simply rely on the county's ownership for liability; he had to allege some "active conduct" on the part of the county that resulted in the discharge of dredged or fill material.  Id.  Because the plaintiff failed to do so, the Seventh Circuit affirmed the district court's dismissal of his Section 404 claim.  Id. at 939.

Plaintiffs here suffer a similar shortcoming: there is no evidence in the record that demonstrates the sort of "active conduct" on the part of Defendant TLC that would make it liable under the CWA. As noted above, Defendant TLC did not perform the physical tasks nor did it direct, enlist, or proposition the work. Def.'s SOMF ¶ 3; Roddenberry Dep. at 32:14–37:6; Sweeney Dep. at 267:4–268:1. Defendant TLC did not pay for the work and, according to its uncontradicted testimony, did not have the ability to control the manner in which it was performed. Def.'s SOMF ¶ 3; Roddenberry Dep. at 32:14–37:6, 56:7–22; Sweeney Dep. at 267:4–268:1. While Plaintiffs emphasize Defendant TLC's partial ownership of the dam and its awareness of the violations, the Court finds these facts insufficient to demonstrate the active conduct needed to hold Defendant TLC liable for the violation of Section 404.[8]

In sum, based upon the text of the statute and regulations, the Court finds that Defendant TLC did not have "responsibility for" nor "control over the performance of work which created a point source for the discharge of [the] pollutant[]." Jones, 333 F. Supp. 2d at 1349. Accordingly, summary judgment in favor of Defendant TLC is warranted.

---

[8] The Court notes that this conclusion is consistent with the unpublished Eleventh Circuit Jones opinion, discussed *supra*. See Jones, No. 04-12206, at *5. While a key fact in Jones was that the county defendant did not own the property, the court also noted that the county "was not responsible for the design flaw at issue." Id. Similarly, Defendant TLC was not responsible for the decisions that led to the discharge in Lower Lake Forrest.

## IV. Conclusion

For the foregoing reasons, the Court **CONVERTS** Defendant Three Lake Corporation's Motion to Dismiss into a Motion for Summary Judgment and **GRANTS** the motion. [Doc. 45]. The Court **DENIES** Plaintiffs' Motion for Summary Judgment. [Doc. 50]. The Court **DIRECTS** the Clerk to **ENTER JUDGMENT** in favor of Defendant Three Lakes Corporation and **CLOSE** this case.

**SO ORDERED**, this 10th day of August, 2020.

*Eleanor L. Ross*
Eleanor L. Ross
United States District Judge
Northern District of Georgia